**James WEAVER, Plaintiff-Movant,**

v.

**Frank J. PATE, Warden, Illinois State Penitentiary, Joliet, Illinois, Defendant.**

Misc. No. 168.

United States Court of Appeals Seventh Circuit.

Dec. 30, 1963.

Certiorari Denied March 2, 1964.
See 84 S.Ct. 795.

354

James Weaver, in pro. per.

William G. Clark, Atty. Gen., State of Illinois, Chicago, Ill., for defendant.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

James Weaver, plaintiff, seeks to appeal from an order of the district court entered on October 17, 1963, which plaintiff describes in his notice of appeal as holding that his complaint under the Civil Rights Act did not state a claim upon which relief could be granted.

Weaver's motion in this court for leave to appeal *in forma pauperis* is before us, 28 U.S.C.A. § 1915.

We have examined the files and records of the district court and find that, in his complaint, plaintiff alleged that defendant warden granted a few inmates in the Stateville penitentiary permission to receive courses from the Illinois state library and that that privilege was denied to plaintiff in violation of his constitutional rights as to which he cites "subparagraph 3 of Paragraph 47, Title 8, United States Code Annotated", which we find to be now incorporated in 42 U.S. C.A. § 1985(3), which gives a right of action for damages to a party injured or deprived of any right or privilege as a citizen of the United States as a result of a conspiracy of two or more persons entered into for that purpose.

The district court appointed attorney Anna R. Lavin, an experienced practicing lawyer, to represent plaintiff in that court.

The defendant warden, by the attorney general of Illinois, moved to dismiss the complaint, in reliance on our holdings in Siegel v. Ragen, 7 Cir., 180 F.2d 785, 788 (1950), and Kelly v. Dowd, 7 Cir., 140 F.2d 81 (1944).

On October 28, 1963, the District Court certified, pursuant to 28 U.S.C.A. § 1915, that in its opinion this appeal "is not taken in good faith".

In aid of our appellate jurisdiction to review orders and judgments of the district court, we have examined the official files and records of that court in Weaver's case, which have been submitted to us by the clerk of that court.[1] We find that summons was served on defendant, and that, on January 7, 1963, there was forwarded to the clerk of that court a written report by defendant, from which we quote, as follows:

"* * * Weaver is confined to the Segregation Unit because he is a non-conformist and an agitator, and has accumulated a total of 45 disciplinary reports since his incarceration here on February 14, 1956. Weaver is one of three inmates who made a vicious attack on two of our Lieutenants. As a result of the injuries received in this attack, the Lieutenants were hospitalized and were absent from duty for several weeks. Weaver was placed in Segregation on April 13, 1957 because of this attack. On his promise to abide by the rules and regulations of the institution, he was released from Segregation in July 1958. In December 1959 Weaver was placed in our institutional High School and was granted the privilege of attending school and he attended school for a little more than two years.

1. See Jones v. Attorney General of the United States, 8 Cir., 278 F.2d 699 (1960).

"Upon his graduation from High School, Weaver refused to accept a work assignment and it was again necessary to place him in the Segregation Unit on January 26, 1962.

"While an inmate is confined to Segregation Unit, one of the privileges taken from him is Correspondence Courses with the Illinois State Library.

"Weaver is one of less than thirty inmates, of a total of 10,000 confined in the Illinois Penal System, who it is necessary to confine in the Segregation Unit.

"I am sure you understand the type of persons confined to an institution of this sort. There are a few inmates who are so lazy that they would prefer being placed in Segregation rather than be required to work. When in Segregation, they are not granted the same privileges as are given the prisoners in the general population.

"If Weaver had obeyed the rules and regulations and accepted the work assignments given him upon his graduation from High School, he would have had the privilege of receiving Correspondence Courses from the Illinois State Library."

In a copy of his complaint filed in the district court and transmitted by Weaver with his application for leave to appeal to this court, Weaver has made no statement to the effect that his conduct as an inmate of the Stateville penitentiary was proper and has not denied that he committed any acts of misconduct.

In Siegel v. Ragen, supra, 180 F.2d at 788, we said:

"The Government of the United States is not concerned with, nor has it power to control or regulate the internal discipline of the penal institutions of its constituent states * * *."

To the same effect is Kelly v. Dowd, supra, 140 F.2d at 83.

In our recent decision in Cooper v. Pate, Warden et al. (1963), 7 Cir., 324 F.2d 165, at 167, which was an action under the Civil Rights Act where violations of various amendments to the Constitution of the United States were relied upon, we said:

"This Court considered the matter of discipline of inmates in state institutions in several cases. In United States ex rel. Morris v. Radio Station WENR, 7 Cir., 209 F.2d 105, at page 107, we stated: 'Inmates of State penitentiaries should realize that prison officials are vested with wide discretion in safe-guarding prisoners committed to their custody. Discipline reasonably maintained in State prisons is not under the supervisory direction of federal courts. Kelly v. Dowd, supra [7 Cir., 140 F.2d 81]. "We think that it is well settled that it is not the function of the courts to superintend the treatment and discipline of prisoners in penitentiaries, but only to deliver from imprisonment those who are illegally confined." Stroud v. Swope, Warden, 9 Cir., 187 F.2d 850, 851. A prisoner may not approve of prison rules and regulations, but under all ordinary circumstances that is no basis for coming into a federal court seeking relief even though he may claim that the restrictions placed upon his activities are in violation of his constitutional rights.' See also, Siegel v. Ragen, 7 Cir., 180 F.2d 785; Morris v. Igoe, 7 Cir., 209 F.2d 108, and United States ex rel. Atterbury v. Ragen, Warden, 7 Cir., 237 F.2d 953."

In view of the factual situation presented by Weaver on his attempted appeal to this court and the established law, evidenced by the foregoing citations, we find that an appeal by him to this court from the district court's action would be frivolous and, therefore, an order will be entered denying his motion for leave to appeal *in forma pauperis*.

Leave to appeal in forma pauperis denied.